IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY T. ENSZ,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

Case No. 07-1120-JTM

**MEMORANDUM AND ORDER**

Before this court is plaintiff Jeffrey T. Ensz's (Ensz) petition for review of a final decision of the Commissioner of Social Security (Dkt. No. 5). Ensz's application for Social Security Disability Benefits and Supplemental Security Income was denied on June 2, 2004, upon the determination by the Administrative Law Judge (ALJ) that Ensz was not entitled to a Period of Disability or Disability Insurance Benefits under Title II of the Social Security Act, and was not eligible for Supplemental Security Income Benefits under Title XVI of the Social Security Act. For the reasons below, this Court affirms the ALJ's ruling.

**I. BACKGROUND**

On May 23, and 30, 2001, Ensz protectively filed an application for Supplemental Security Income and for a Period of Disability and Disability Insurance Benefits, alleging he had a disability that began on July 17, 2000. Both of these claims were denied in an initial

determination on August 8, 2001.  Ensz then protectively filed another application for Supplemental Security Income Benefits on February 15, 2002, and for a Period of Disability and Disability Insurance Benefits on February 21, 2002.  These claims were denied initially and on reconsideration.  Ensz then timely filed a request for a hearing, which was held on September 24, 2003, followed by a supplemental hearing on December 9, 2003.  Ensz's claims were denied on June 2, 2004, and the Appeals Council denied his request for review of that decision on July 20, 2004, rendering the ALJ decision the final decision of the Commissioner of Social Security.  Ensz then timely filed a complaint with this court (Dkt. No. 1).

Ensz claims that the evidence shows that he suffers from impairments of such severity and duration as to constitute a disability within the meaning of the Social Security Act, which would entitle him to Social Security Disability Insurance Benefits and Supplemental Security Income Benefits.  Specifically, he claims: (1) that the ALJ did not properly consider the opinions of two of his treating physicians; (2) that the ALJ's determination of his residual functional capacity (RFC) was not supported by the substantial evidence of the record; and (3) that the ALJ erred in relying on the vocational expert's testimony.

The detailed facts of this case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 17-32) as well as the briefs of Ensz (Dkt. No. 5) and the Commissioner (Dkt. No. 8).  Ensz was born in 1968 and claims that he became disabled due to numerous problems with his back, stomach, legs, and head, stemming from chemical exposure from his previous place of employment.  Ensz graduated from high school and had some college education, and had previously been employed as a mixing machine tender, construction worker, rough carpenter, maintenance mechanic, pharmacy deliverer, and grain elevator operator (Tr. 18).

Specifically, Ensz suffers from "a pain disorder, with psychological and general medical factors; undifferentiated somatoform disorder; nicotine dependence; personality disorder not otherwise specified and obesity with respiratory and connective tissue type complaints including multiple chemical sensitivity." (Tr. 18). Some of his symptoms include rectal bleeding, headaches, leg pain, and shortness of breath.

Ensz has seen several physicians during the course of his alleged disability. Specifically, Ensz was treated by three physicians, Dr. Freelove, Dr. Strickland, and Dr. Toth. Dr. Freelove was Ensz's treating physician for the longest period, from March 22, 2001 to September 6, 2002. Dr. Freelove treated Ensz several times and specifically refused to support Ensz's bid for disability, stating on more than one occasion that Ensz was capable of engaging in employment.

Dr. Strickland treated Ensz a limited number of times, primarily for his allergies, from May 16, 2002 to December 27, 2002. On March 12, 2003, Dr. Strickland completed a Medical Source Statement for Ensz, and concluded that Ensz could (1) lift and/or carry fifteen pounds frequently and occasionally; (2) stand and/or walk continuously throughout an eight hour day; (3) sit continuously and throughout an eight hour day for one hour; (4) occasionally climb, balance, stoop, kneel, crouch, crawl, reach, handle; (5) frequently touch, feel, see, speak, hear; and (6) avoid moderate exposure to environmental factors (Tr. 598-599). Dr. Strickland also noted that Ensz would need to take 15-30 minute sitz baths four to five times a day (Tr. 599).

Dr. Toth treated Ensz on nine occasions from March 26, 2003, through September 10, 2003. Dr. Toth filled out a RFC form on June 23, 2003, in which he reached the same conclusion as Dr. Strickland; however, he restricted Ensz to (1) lift and/or carry less than five pounds frequently and occasionally and (2) never climb, balance, crouch or crawl (Tr. 605-06).

In addition, Dr. Toth also recommended that Ensz lie down four to five times a day in hot baths to help relieve pain (Tr. 606).

After evaluating all the medical evidence, the ALJ concluded that Ensz engaged in substantial gainful activity until July 17, 2000, and that he suffered from severe impairments (Tr. 18-19). Nevertheless, the ALJ concluded that Ensz was not "disabled" under the Social Security Act at any time since July 17, 2000 (Tr. 18). Specifically, the ALJ found that:

> After careful consideration of the entire record, the Administrative Law Judge finds, although [Ensz] can perform some of his past relevant work, there is also other work which exists in the national economy in substantial numbers that he can perform. Therefore, [Ensz] has not been "disabled" under the Social Security Act at any time since July 17, 2000, the date [Ensz] claimed his disability began. [Ensz] met the insured status requirements for Title II, on the date he alleged the onset of his disability and continues to meet the insured status requirements through December 31, 2004.  (Tr. 18).

The ALJ found that although Ensz does have severe impairments, he does not have "marked restrictions in his activities of daily living, his ability to maintain social functioning, or in maintaining concentration" (Tr. 19). In addition, Ensz retains the ability to perform other jobs that exist in the national economy such as wire worker, hand mounter, ticket seller, and hand packager (Tr. 30-31).

## II. LEGAL STANDARD

This court's standard of review is governed by the Social Security Act, which provides, in part, that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court reviews the Commissioner's decision only to determine whether the decision was supported by substantial evidence, and that the correct legal standard was applied. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). "'Substantial evidence' requires 'more than a scintilla, but less than a preponderance,' and is satisfied by 'such

evidence that a reasonable mind might accept to support the conclusion.'" *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The court is not allowed to "reweigh the evidence nor substitute [its] judgment for that of the agency." *White*, 287 F.3d at 905 (quoting *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, the findings will not be affirmed without scrutinizing the entire record to determine if the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

An individual is disabled only if the individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The physical or mental impairment must be so severe that the individual cannot perform any of his or her past relevant work, and cannot engage in other substantial gainful work existing in the national economy, considering the individual's age, education, and work experience. *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2008).

The Social Security Administration, pursuant to the Social Security Act, has established a five-step evaluation process for determining whether an individual is disabled. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); 20 C.F.R. § 404.1520(a) (2008). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). The first three steps require the Commissioner to determine: (1) whether the claimant has engaged in gainful activity since the disability began; (2) whether the claimant has severe physical or mental impairments; (3) whether the severity of the impairments meet or equal a specific list of impairments. *Williams v. Bowen*,

844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. § 404.1520.  When the impairment does not meet or equal a listed impairment, the ALJ must "make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in your case record."  20 C.F.R. § 416.920(e).

After assessing the claimant's RFC, the Commissioner may move to steps four and five, which require assessing whether the claimant can perform any past relevant work and whether the individual can generally perform other work that exists in the national economy.  *Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520.  While the claimant bears the burden of proof in steps one through four to prove that he has a disability that prevents performance of past relevant work, the commissioner bears the burden at step five to prove that there are jobs in the national economy the claimant can perform.  *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

### III. ANALYSIS

Ensz argues that the Commissioner erred in denying his application for Disability Insurance Benefits and Supplemental Security Benefits because:  (1) the ALJ failed to give controlling weight to the opinions of two of Ensz's treating physicians; (2) the ALJ erred in determining that Ensz's RFC was based upon substantial evidence; and (3) the ALJ erred in crediting the vocational witness' testimony.  Essentially Ensz argues that the ALJ improperly found that he was not disabled and that he had a residual functional capacity that would allow him to perform some occupations existing in the national economy.  The Commissioner, however, argues that the ALJ properly assessed the opinions of all Ensz's treating physicians and considered all of the relevant medical evidence before making his decision.

6

## 1. TREATING PHYSICIANS' OPINIONS

First, Ensz argues that the ALJ improperly accorded controlling weight to Dr. Freelove's opinion and improperly discounted the opinions of Dr. Strickland and Dr. Toth. "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ must give controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). A treating physician who has treated a patient for a longer period of time is generally expected to have greater insight into the patient's medical condition. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). If the ALJ rejects the opinion of a treating physician, he must give a "sufficient explanation" for rejecting a treating physician's opinion. *Id.* "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).

Here, the ALJ accorded controlling weight to the opinion of Dr. Freelove. The first thing the ALJ considered is whether Dr. Freelove's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ specifically noted that Dr. Freelove was Ensz's treating physician for a longer time than the other two treating physicians. During that time, Dr. Freelove examined and treated Ensz on many occasions and declined to support Ensz's disability claim (Tr. 387). According to Dr. Freelove, Ensz had nothing wrong

7

with him which would prevent him from getting a job, even if it meant getting a job answering phones (Tr. 399-400).  Although Ensz frequently complained of rectal bleeding and pain in his anus, his colonoscopy had not shown that there was anything significantly wrong with his gastrointestinal tract (Tr. 402).  The ALJ also found that many other objective medical tests, conducted by several different physicians, including CT scans, EKG tests, EEG tests, blood work, and several x-rays, indicated that Ensz did not have impairments that constituted a disability under the Social Security Act.

In addition to the objective tests Dr. Freelove performed on Ensz, he also retained copious notes of Ensz's visits.  His notes are replete with Ensz's complaints of various ailments, but the objective medical tests showed Ensz did not have any major problems.  In addition, Ensz ignored Dr. Freelove's advice and refused to see a psychiatrist.  Other than suggesting that Ensz should not return to his prior employment at the chemical plant, Dr. Freelove did not put any restrictions on Ensz's ability to seek employment.  For the reasons noted above, the ALJ gave Dr. Freelove's opinion controlling weight.

With respect to Dr. Strickland, the ALJ found that he was a "treating physician," but that he treated Ensz for his allergies and not for his anal pain. On November 25, 2002, Dr. Strickland referred Ensz to Dr. Brown, who examined Ensz's anal pain.  Dr. Brown found that Ensz had a posterior midline fissure in the ano, a change in his bowel habits, chemical exposure to chloroacetic acid, and peptic ulcer disease (Tr. 25).  However, Dr. Brown never concluded that Ensz was disabled. Dr. Strickland's conclusions in the medical source statement he completed for Ensz were not supported by Dr. Brown's examination of Ensz.  In addition, the ALJ specifically found that Dr. Strickland's medical source statement did not coincide with most of

the other objective medical tests; thus, the ALJ did not give it controlling weight.

Similarly, the ALJ also recognized that while Dr. Toth was a treating physician, Dr. Toth only treated Ensz for a few months from March 26, 2003, through September 10, 2003, and that the weight of the objective medical evidence contradicted Dr. Toth's opinion.  Dr. Toth's conclusions did not correspond with the myriad prior tests conducted by Dr. Freelove and several other physicians, indicating that Ensz was not suffering from any impairment that would totally preclude him from seeking employment.  Dr. Toth's opinion was also contradictory to Dr. Freelove's opinion, which stated that Ensz was not disabled.

This court finds that the conclusions of the ALJ are not in error.  Substantial evidence in the record supports Dr. Freelove's opinion rather than the opinions of Dr. Strickland and Dr. Toth.  Both Dr. Strickland and Dr. Toth only treated Ensz for a short period of months during 2002 and 2003.  In addition, Dr. Strickland and Dr. Toth's opinions were not supported by the weight of the objective medical evidence.  Because the ALJ adequately evaluated the opinions of all Ensz's treating physicians and gave sufficient reasons for according Dr. Freelove's opinion controlling weight, the ALJ did not err by refusing to accord Dr. Strickland and Dr. Toth's opinions controlling weight.  Substantial evidence in the record supports the ALJ's finding.

### 2. RESIDUAL FUNCTIONAL CAPACITY

Next, Ensz argues that the ALJ did not properly assess his RFC by determining that Ensz retains the ability to perform a somewhat restricted range of medium exertional level work. Specifically Ensz argues that the ALJ improperly discounted the medical source statements of Dr. Strickland and Dr. Toth, which provided that Ensz needed to take 4-5 fifteen-minute sitz baths during an 8 hour workday.

An individual's "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL374184 at 2. The RFC takes into account the functional limitations and restrictions that result from an individual's medically determinable impairments. SSR 96-8p, 1996 WL374184 at 2. In addition, the ALJ must conduct a narrative discussion, which describes how all the relevant medical and non-medical evidence supports his conclusion. SSR 96-8p, 1996 374184 at 7.

As explained earlier, substantial evidence in the record supports the ALJ's evaluation of the treating physician's medical opinions. Specifically the ALJ did not err in giving controlling weight to Dr. Freelove's opinion and discounting the medical source statements of Dr. Strickland and Dr. Toth. The ALJ specifically found that the Ensz did retain the ability to perform a restricted range of medium-level work. In coming to this conclusion, the ALJ analyzed all of Ensz's medically determinable impairments and conducted a narrative discussion that supported the ALJ's conclusions. As previously explained, the objective medical tests conducted by numerous physicians, including Dr. Freelove, indicated that Ensz did not have any medically determinable impairment that prevented him from seeking employment. Because Dr. Freelove's opinion is consistent with the ALJ's RFC, the ALJ did not err in finding that Ensz retained the ability to perform a restricted range of medium-level work.

### 3. VOCATIONAL EXPERT TESTIMONY

The ALJ relied on the testimony of a vocational expert in the determination that there were jobs in the national economy Ensz was capable of performing. It is well within the discretion of the ALJ to use the testimony of a vocational expert to determine the existence of work in the national economy. 20 C.F.R. § 404.1566(e).

Claiming error, Ensz first argues that the ALJ was incorrect in ignoring the portion of the vocational expert's testimony, which stated that a person who must take 4-5, fifteen-minute sitz baths per day would be unable to perform any competitive employment (Tr. 206). The ALJ only ignored the portion of the vocation expert's testimony that was based on restrictions contained in Dr. Strickland's and Dr. Toth's medical source statements. The hypothetical question posed to the vocational expert stated:

> Assume that due to the claimant's psychological impairments, a global deterioration in physical functioning is shown which warrants reduction in claimant's residual functional capacity to lifting no more than 15 pounds frequently or occasionally, standing or walking less than one hour continuously, standing or walking less than one hour of an 8 hour day, and sitting continuously for up to one hour of an 8 hour day. Further assume that the claimant must spend 15 – 30 minutes 4 – 5 times per day in a sitz bath to help alleviate pain. Could a person with these restrictions perform the past relevant work of the claimant? . . . If not, are there other occupations that the claimant could perform?

(Tr. 202). The vocational expert concluded that an individual with the above impairments "could not perform any past relevant work. He also could not perform any competitive employment." (Tr. 206). The ALJ properly discounted the medical source statements of Dr. Strickland and Dr. Toth because the opinions were in conflict with the rest of the medical evidence. Because the hypothetical question was based on the discounted medical source statements, it was proper for the ALJ to ignore that portion of the vocational expert's testimony.

Ensz also argues that the ALJ did not provide a reasonable explanation for relying on the other portions of the vocational expert's testimony, which stated that there were jobs in the national economy that an individual with Ensz's similar medical restrictions could perform. For the reasons stated previously, the ALJ properly evaluated the objective medical evidence and the opinions of all Ensz's treating physicians. Because substantial evidence supports the ALJ's

conclusion, the ALJ properly relied on the rest of the vocational expert's testimony in concluding that there were jobs in the national economy that Ensz could perform and did not err in discounting the vocational expert's answer pertaining to the discounted medical source statements.

## IV. CONCLUSION

Based on the appropriate standard of review, substantial evidence supports all of the ALJ's findings. The ALJ properly evaluated the opinions of all Ensz's treating physicians and accorded controlling weight to Dr. Freelove, who was Ensz's treating physician for the longest period. In addition, the ALJ did not err by refusing to give controlling weight to the opinions of Dr. Strickland and Dr. Toth because their opinions were against the weight of most of the objective medical evidence. Although the ALJ found that Ensz does have medically determinable impairments, substantial evidence supports the ALJ's conclusion that Ensz does retain the RFC to perform a restricted range of medium-level work. Finally, the ALJ did not err by relying on the testimony of the vocational expert to find that there are jobs existing in the national economy that Ensz could perform. In sum, the ALJ's finding is supported by substantial evidence in the record, and the decision is hereby affirmed.

IT IS ACCORDINGLY ORDERED this 29th day of September 2008, that the present appeal is hereby denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE